JOSEPH M. GOETHALS (SBN 242889)
joe@gostlaw.com
CHARLES P. STONE (SBN 224897)
charles@gostlaw.com
DAVID G. HOLLENBERG (SBN 325408)
dave@gostlaw.com
**GOETHALS & STONE, PC**
330 Primrose Road, Suite 614
Burlingame, CA 94010
Telephone: (650) 218-4319
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JOHN JL DOE, JOHN KO DOE, JOHN KS2 DOE, JOHN TA DOE, JOHN MW DOE,

Plaintiffs,

v.

COUNTY OF SAN MATEO; STUART FORREST; JOSE VILLEGAS; EDWARD D. TAYLOR; SHERALYN FREITAS; MICHAEL STAUFFER; REGINA WILSON-HENRY; BONNIE MACASKILL; RHONDA COLLINS; AND DOES 1–100, inclusive,

Defendants.

Case No.

**COMPLAINT FOR DAMAGES**

1. Violation of Civil Rights (42 U.S.C. § 1983 – Fourth Amendment: Unreasonable Searches)
2. Violation of Civil Rights (42 U.S.C. § 1983 – Fourteenth Amendment: Substantive Due Process / Bodily Integrity)
3. Violation of Civil Rights (42 U.S.C. § 1983 – Fourteenth Amendment: Equal Protection)
4. Monell Municipal Liability (42 U.S.C. § 1983 - Unconstitutional Policy, Custom, Practice, and Deliberate Indifference)
5. Violation of the Bane Act (California Civil Code § 52.1)
6. Sexual Battery (Cal. Civil Code § 1708.5; Gov Code § 815.2)
7. Battery (Common Law; Gov. Code § 815.2)
8. Intentional Infliction of Emotional Distress (Gov. Code § 815.2)
9. Negligence (Gov. Code § 815.2)
10. Negligent Hiring, Supervision, and Retention

**DEMAND FOR JURY TRIAL**

## TABLE OF CONTENTS


**I. PRELIMINARY STATEMENT** ..... 1

**II. PARTIES** ..... 1

A. Plaintiffs ..... 1

B. Defendants ..... 3

**III. JURISDICTION, VENUE, AND JOINDER** ..... 7

**IV. PSEUDONYMOUS FILING** ..... 9

**V. TIMELINESS; STATUTES OF LIMITATION; TOLLING** ..... 10

A. The Governing Statute ..... 10

B. Plaintiffs' State Law Claims Are Timely Under § 340.11(a)(1) ..... 10

C. Plaintiffs' Claims Under 42 U.S.C. § 1983 Are Timely ..... 11

D. Equitable Estoppel ..... 12

E. No Government Claim Presentation Required ..... 13

**VI. FACTUAL ALLEGATIONS** ..... 13

A. The County's Probation Enterprise and the Authority It Conferred ..... 13

B. John Domeniconi — A Predator Enabled by County Authority ..... 14

C. The County's Actual Knowledge and Suppression of Complaints ..... 16

D. Color of Law ..... 20

E. Plaintiff-Specific Allegations ..... 20

a. JOHN JL DOE ..... 21

b. JOHN KO DOE ..... 23

c. JOHN KS2 DOE ..... 24

d. JOHN TA DOE ..... 26

e. JOHN MW DOE ..... 27

**VII. CAUSES OF ACTION** ..... 29

FIRST CAUSE OF ACTION: Violation of 42 U.S.C. § 1983 — Fourth Amendment (Unreasonable Searches) ..... 29

SECOND CAUSE OF ACTION: Violation of 42 U.S.C. § 1983 — Fourteenth Amendment (Substantive Due Process / Bodily Integrity) .......... 30
THIRD CAUSE OF ACTION: Violation of 42 U.S.C. § 1983 — Fourteenth Amendment (Equal Protection) .......... 31
FOURTH CAUSE OF ACTION: *Monell* Municipal Liability — 42 U.S.C. § 1983 .......... 32
Theory 1: Longstanding Custom and Practice of Deliberate Indifference .......... 32
Theory 2: Failure to Train and Supervise with Deliberate Indifference .......... 32
Theory 3: Ratification by Final Policymakers .......... 33
Theory 4: Deliberately Indifferent Policy of Inadequate Safeguards .......... 33
FIFTH CAUSE OF ACTION: Violation of the Bane Act (California Civil Code § 52.1) .......... 34
SIXTH CAUSE OF ACTION: Sexual Battery (California Civil Code § 1708.5; Government Code § 815.2) .......... 35
SEVENTH CAUSE OF ACTION: Battery (Common Law; Government Code § 815.2) .......... 35
EIGHTH CAUSE OF ACTION: Intentional Infliction of Emotional Distress (Government Code § 815.2) .......... 36
NINTH CAUSE OF ACTION: Negligence (Government Code § 815.2) .......... 36
TENTH CAUSE OF ACTION: Negligent Hiring, Supervision, and Retention .......... 37
**VIII. DAMAGES** .......... 38
**IX. PRAYER FOR RELIEF** .......... 38
**X. JURY TRIAL DEMAND** .......... 39

## I. PRELIMINARY STATEMENT

This is a civil rights action brought by five survivors of childhood sexual abuse perpetrated by John Domeniconi ("Domeniconi"), a Deputy Probation Officer employed for decades by Defendant County of San Mateo ("County"). Domeniconi weaponized the extraordinary coercive power of the state — the authority to compel strip searches, administer urine tests, impose probation violations, and determine whether a child would sleep that night in a detention facility or at home — to systematically sexually abuse, assault, and terrorize vulnerable minors placed in his custody and care.

Domeniconi was not a rogue actor. He was an institutionally protected predator. The County received written reports of his abuse as early as 1990. It investigated him in 2002. When probationers filled out grievance forms, they would be thrown in a trash bin. Despite each warning sign, each complaint, each report, it promoted him and gave him more opportunities to abuse and take advantage of probationers, many of whom were not even assigned to him. The County and its employees' deliberate indifference to Domeniconi's unconstitutional conduct, and its affirmative ratification of that conduct through continued employment and promotion, transformed each individual act of abuse into an act of government.

Plaintiffs bring this action to vindicate their rights under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and the laws of the State of California. They seek compensatory damages, statutory damages, treble damages, exemplary damages against the individual Defendants, and attorney's fees.

## II. PARTIES

### A. Plaintiffs

1. **Plaintiff JOHN JL DOE** is a male individual born in 1986, currently 39 years of age, and a resident of San Mateo County, California. He uses a pseudonym to protect his privacy as a survivor of childhood sexual assault. At all relevant times he was a juvenile probationer under the supervision of the County's Probation Department and subject to Domeniconi's direct or *de facto* supervisory authority. He was subject to that authority from approximately 2002 to 2003, during which period he was placed at Hillcrest Juvenile Hall and supervised in the community.

2. **Plaintiff JOHN KO DOE** is a male individual born in 1994, currently 32 years of age, and a resident of the County of Santa Clara, California. He uses a pseudonym to protect his privacy as a survivor of childhood sexual assault. At all relevant times he was a juvenile probationer under the supervision of the County's Probation Department and subject to Domeniconi's direct or *de facto* supervisory authority. He was subject to that authority from approximately 2006 to 2012, during which period he was placed at Hillcrest Juvenile Hall and supervised in the community.

3. **Plaintiff JOHN KS2 DOE** is a male individual born in 1986, currently 39 years of age, and a resident of the County of San Mateo, California. He uses a pseudonym to protect his privacy as a survivor of childhood sexual assault. At all relevant times he was a juvenile probationer under the supervision of the County's Probation Department and subject to Domeniconi's direct or *de facto* supervisory authority. He was subject to that authority from approximately 1996 to 2004, during which period he was placed at Hillcrest Juvenile Hall and supervised in the community.

4. **Plaintiff JOHN TA DOE** is a male individual born in 1987, currently 38 years of age, and a resident of San Diego County, California. He uses a pseudonym to protect his privacy as a survivor of childhood sexual assault. At all relevant times he was a juvenile probationer under the supervision of the County's Probation Department and subject to Domeniconi's direct or *de facto* supervisory authority. He was subject to that authority from approximately 2003 to 2006, during which period he was placed at Hillcrest Juvenile Hall and supervised in the community.

5. **Plaintiff JOHN MW DOE** is a male individual born in 1988, currently 38 years of age, and a resident of Alameda County, California. He uses a pseudonym to protect his privacy as a survivor of childhood sexual assault. At all relevant times he was a juvenile probationer under the supervision of the County's Probation Department and subject to Domeniconi's direct or *de facto* supervisory authority. He was subject to that authority from approximately 2002 to 2006, during which period he was placed at Hillcrest Juvenile Hall and supervised in the community.

6. Each Plaintiff was under 40 years of age as of the date this Complaint is filed. Because the childhood sexual assaults alleged herein occurred before January 1, 2024, the timeliness of Plaintiffs' state law claims is governed by California Code of Civil Procedure § 340.11, enacted by Senate Bill 558 (2023) and effective January 1, 2024, and not by California Code of Civil Procedure §

340.1, which by its terms applies to childhood sexual assault occurring on and after January 1, 2024. Because no Plaintiff was 40 years of age or older at the time this action was filed, neither the certificate-of-merit requirements of § 340.11(f) and (g) nor the service and fictitious-designation provisions of § 340.11(i) and (l), each of which applies only to an action subject to § 340.11(f), applies to this action.

7. The true names and identifying information of Plaintiffs are withheld from the public record to protect Plaintiffs' privacy as survivors of childhood sexual assault. *See Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000). Concurrently with this Complaint, Plaintiffs will file an administrative motion under Civil Local Rule 7-11 for leave to proceed under pseudonyms. Plaintiffs will disclose their true identities to counsel for Defendants, to be held in confidence under a protective order.

**B. Defendants**

8. **Defendant County of San Mateo** ("County") is a public entity organized and existing under the laws of the State of California. At all relevant times, the County operated and controlled a Probation Department responsible for the supervision, custody, and care of juvenile probationers, including each of the Plaintiffs. The County is sued under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for its own unconstitutional policies, customs, practices, and deliberate indifference, and pursuant to California Government Code § 815.2 for the acts and omissions of its employees acting within the course and scope of employment.

9. **John Domeniconi** ("Domeniconi") was at all relevant times a Deputy Probation Officer employed by the County's Probation Department. Domeniconi died on September 23, 2020. He is named herein solely to provide factual context. No claim for personal damages is asserted against his estate, and Domeniconi is not named as a defendant in this action.

10. **Defendant Stuart Forrest ("Forrest")** served the County of San Mateo Probation Department from 1977 to 2013 — a tenure spanning every notice event and every act of abuse alleged in this Complaint, all of which occurred between approximately 1990 and 2012. On information and belief, throughout that period and before his 2009 appointment as Chief Probation Officer, Forrest held supervisory positions within the Department with direct or indirect oversight of Domeniconi; the

precise assignments and dates are recorded in personnel records within the County's exclusive possession and control, as alleged in Paragraph 62. On information and belief, during the period of Plaintiffs' abuse Forrest received or was informed of complaints concerning Domeniconi's misconduct with juvenile probationers and of the Department's failure to investigate or remediate that misconduct, and failed to take adequate remedial action, including failing to investigate, discipline, restrict, remove, or report Domeniconi, and failed to make any required mandated report under California Penal Code section 11166. In 2009, Forrest was appointed Chief Probation Officer, and in that capacity was a final policymaker with authority over the hiring, supervision, discipline, promotion, retention, and removal of all Probation Department personnel. Forrest is sued in his individual capacity.

11. **Defendant Jose Villegas ("Villegas")** was at all relevant times a probation officer or supervisory employee of the County of San Mateo Probation Department. Prior to 2003, Villegas directly received a disclosure from at least one juvenile probationer under County supervision reporting that Domeniconi had directed sexualized comments and conduct toward him, including asking the probationer what he did when he took showers. Notwithstanding receipt of this direct complaint, Villegas failed to investigate, failed to report to supervisors or law enforcement, and failed to make any mandated report under California Penal Code section 11166, thereby actively concealing Domeniconi's abuse and enabling its continuation. Villegas is sued in his individual capacity.

12. **Defendant Edward D. Taylor ("Taylor")** was at all relevant times a probation officer or supervisory employee of the County of San Mateo Probation Department. Prior to 2003, Taylor directly received a disclosure from at least one juvenile probationer in Domeniconi's custody alleging that Domeniconi had sexually abused him. Notwithstanding receipt of this direct complaint, Taylor failed to investigate, failed to report to supervisors or law enforcement, and failed to make any mandated report under California Penal Code section 11166, thereby actively concealing Domeniconi's abuse and enabling its continuation. Taylor is sued in his individual capacity.

13. **Defendant Sheralyn Freitas ("Freitas")** served as a supervisory employee of the County of San Mateo Probation Department, ultimately holding the office of Assistant Chief Probation Officer, during a period encompassing, on information and belief, the abuse of one or more

Plaintiffs. Under the Department's own complaint-handling structure, complaints concerning probation officers were escalated to the Department's executive tier — the same tier that the County's own 1991 written records show was consulted regarding complaints against Domeniconi. On information and belief, Freitas received or was informed of complaints concerning Domeniconi's misconduct with juvenile probationers and failed to take adequate remedial action, including failing to investigate, discipline, remove, or report Domeniconi. Freitas is sued in her individual capacity.

14. **Defendant Michael Stauffer ("Stauffer")** served as a supervisory employee of the County of San Mateo Probation Department, ultimately holding the office of Deputy Chief Probation Officer — the office to which, per the County's own 1991 written records, complaints concerning Domeniconi were routed for consultation — during a period encompassing, on information and belief, the abuse of one or more Plaintiffs. On information and belief, Stauffer received or was informed of complaints concerning Domeniconi's misconduct with juvenile probationers and failed to take adequate remedial action, including failing to investigate, discipline, remove, or report Domeniconi. Stauffer is sued in his individual capacity.

15. **Defendant Regina Wilson-Henry ("Wilson-Henry")** served the County of San Mateo Probation Department for over 32 years. She held supervisory positions at the County's juvenile hall beginning in November 1985, and from September 1994 forward held institutional management authority over the County's juvenile hall and juvenile camps — the very facilities in which Domeniconi had custodial access to juvenile probationers, during the very period in which written ward grievances were submitted and discarded, Domeniconi was discovered alone with a minor probationer in the minor's room, and the Sheriff's Office investigated a complaint against him. Ward grievances at those facilities were routed to facility management for review. On information and belief, Wilson-Henry received or was informed of complaints concerning Domeniconi's misconduct with juvenile probationers and failed to take adequate remedial action, including failing to investigate, discipline, remove, or report Domeniconi. Wilson-Henry is sued in her individual capacity.

16. **Defendant Bonnie MacAskill ("MacAskill")** served as a supervisory employee of the County of San Mateo Probation Department, including as Probation Services Manager I and II and Assistant Deputy Chief, during a period encompassing the abuse of one or more Plaintiffs. MacAskill

has acknowledged that she was aware of a complaint involving Domeniconi at the time it occurred, in or about the year 2002. In or about 2013–2014 she directly supervised Domeniconi's direct supervisor. On information and belief, MacAskill received or was informed of complaints concerning Domeniconi's misconduct with juvenile probationers and failed to take adequate remedial action, including failing to investigate, discipline, remove, or report Domeniconi. MacAskill is sued in her individual capacity.

17. **Defendant Rhonda Collins ("Collins") served** the County of San Mateo Probation Department beginning in October 1983, and from approximately 2000 on, served as a Probation Services Manager I — the supervisory classification directly responsible for supervising deputy probation officers — holding supervisory assignments across the Department's juvenile institutions and field services, including service as interim Director of the County's juvenile hall. From approximately 2000 forward — including during the period of one or more Plaintiffs' abuse — Collins held that supervisory classification and, on information and belief, received or was informed of complaints concerning Domeniconi's conduct with minors and failed to investigate, escalate, report, or restrict his access to probationers. Per the County's own designated representative, Collins directly supervised Domeniconi for a period in or about 2013–2014. In or around the year 2010, Charles Etchison, the founder and director of the Jericho Project, a residential treatment program serving County of San Mateo probationers, telephoned the Probation Department to report Domeniconi's conduct: Domeniconi had repeatedly appeared at the program; had represented himself as the current probation officer of program participants when he was not; had taken participants — his former juvenile probationers — out of the program for meals and shopping trips; and had bought them clothes, cologne, and other personal items. Etchison's call was transferred to Domeniconi's supervisor, Defendant Collins. Etchison told Collins that "there is something definitely wrong here," that the conduct was not typical of a probation officer, and that it had to be investigated. Collins responded by warning Etchison that he was making accusations that could affect someone's career and could lead to termination. Notwithstanding this direct, detailed report of grooming behavior by an officer with ongoing custodial access to minors, Collins failed to investigate, failed to escalate or report the complaint to Department executives or law enforcement, and failed to take any step to

restrict Domeniconi's access to probationers, thereby suppressing the complaint and enabling Domeniconi's continued abuse. Collins is sued in her individual capacity.

18. **Defendants DOES 1–100** are or were, at all relevant times, employees, agents, supervisors, managers, and/or policymakers of the County who, acting within the course and scope of their employment: (a) directly participated in the deprivation of Plaintiffs' constitutional rights; (b) implemented, authorized, or ratified unconstitutional policies, customs, or practices; (c) failed to train, supervise, discipline, or remove Domeniconi despite actual or constructive knowledge of his unconstitutional and tortious conduct; and/or (d) concealed, suppressed, or failed to investigate complaints arising from Domeniconi's abuse. DOES 1–100 are sued in their individual capacities. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained through discovery. The Defendants identified in Paragraphs 10 through 17, together with Does 1 through 100, are referred to collectively herein as the "Individual Defendants."

19. The conduct of the Individual Defendants alleged in Paragraphs 10 through 18 is incorporated by reference into each cause of action asserted below. Each Individual Defendant is alleged to have acted, and to have failed to act, during the period of one or more Plaintiffs' abuse, which ran from approximately 2000 through 2012.

## III. JURISDICTION, VENUE, AND JOINDER

20. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), as this action arises under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

21. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a), as those claims are so related to the federal claims that they form part of the same case or controversy.

22. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b), because Defendant County of San Mateo resides in this District and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District, including at Hillcrest Juvenile Hall and Camp Glenwood in San Mateo County, California.

23. Intra-district assignment to the San Francisco Division is appropriate pursuant to N.D. Cal. Civil Local Rule 3-2(d), which assigns all civil actions arising in San Mateo County to either the San Francisco Division or the Oakland Division.

24. This action is related to *John AG Doe, et al. v. County of San Mateo, et al.*, No. 3:26-cv-06838-CRB (N.D. Cal.), pending before the Honorable Charles R. Breyer. Both actions arise from the sexual abuse of juvenile probationers by the same County Deputy Probation Officer, John Domeniconi; both are brought against the County of San Mateo and the same supervisory personnel; and both present the same questions concerning the County's notice of Domeniconi's conduct, its policies, customs, and practices, its supervision and retention of Domeniconi, and its records. Pursuant to Civil Local Rule 3-12, Plaintiffs will promptly file in that action an Administrative Motion to Consider Whether Cases Should Be Related.

25. Plaintiffs are properly joined in this action under Federal Rule of Civil Procedure 20(a)(1). Plaintiffs' claims arise out of the same series of transactions and occurrences: the County's retention of a single Deputy Probation Officer in a position of unsupervised, intimate access to the juvenile male probationers committed to its custody; its receipt, from no later than 1990, of an accumulating series of written and verbal reports that he was abusing them; its suppression of those reports and its failure to investigate, discipline, restrict, or remove him; and its promotion of him notwithstanding that knowledge. Each Plaintiff was abused by the same employee, in the same County facilities, under the same custodial authority, and during an overlapping period of years, and each Plaintiff's injury is a consequence of that same institutional course of conduct. Claims arising from a systematic pattern of events satisfy the transaction-or-occurrence requirement of Rule 20. *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997); *see Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) ("all logically related events entitling a person to institute a legal action" comprise a single transaction or occurrence, and joinder is proper where each plaintiff's injury flows from a single institutional policy). Questions of law and fact common to all Plaintiffs will arise in this action, including:

a. Whether the County knew or should have known that Domeniconi posed a risk of sexual abuse to the minors committed to its custody;

b. Whether the County maintained a policy, custom, or practice of failing to investigate, document, discipline, and report complaints of sexual misconduct by probation personnel;

c. Whether the County failed to train and supervise its probation personnel with deliberate indifference to the constitutional rights of those minors;

d. Whether final policymakers for the County ratified Domeniconi's conduct;

e. Whether Domeniconi acted under color of state law and within the course and scope of his employment; and

f. Whether the County concealed the reports of abuse it received, and the effect of that concealment on the running of any limitations period.

26. Joinder of Plaintiffs' claims in a single action serves the purpose of Rule 20, under which "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties." *League to Save Lake Tahoe v. Tahoe Regional Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966)). Trying these claims separately would require five separate juries to resolve the same questions concerning the County's knowledge, policies, supervision, and records, on the same documents and the same witnesses. Should the Court later determine that separate trials are necessary to avoid prejudice to any party, Federal Rules of Civil Procedure 20(b) and 42(b) provide that remedy without severing this Complaint.

## IV. <u>PSEUDONYMOUS FILING</u>

27. Plaintiffs file this action under pseudonyms. Each Plaintiff is a survivor of childhood sexual abuse and faces a substantial risk of harm including stigma, re-traumatization, and interference with ongoing therapeutic treatment if their identities are publicly disclosed. The need for anonymity substantially outweighs any public interest in disclosure. The use of pseudonyms will not prejudice Defendant County of San Mateo, a governmental entity with full access to its own Probation Department records, including records identifying the individuals associated with the reported abuse. *See Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067–68 (9th Cir. 2000). Plaintiffs will file a concurrent administrative motion for leave to proceed under pseudonyms.

## V. TIMELINESS; STATUTES OF LIMITATION; TOLLING

### A. The Governing Statute

28. Each cause of action in this Complaint seeks recovery of damages suffered from childhood sexual assault, as defined by California Code of Civil Procedure § 340.11(d).

29. The childhood sexual assaults alleged herein occurred before January 1, 2024. The timeliness of Plaintiffs' state law claims is therefore governed by California Code of Civil Procedure § 340.11, and not by § 340.1, which applies by its terms to childhood sexual assault occurring on and after January 1, 2024.

### B. Plaintiffs' State Law Claims Are Timely Under § 340.11(a)(1)

30. Section 340.11(a)(1) provides that an action for recovery of damages suffered as a result of childhood sexual assault occurring before January 1, 2024, shall be commenced "within 22 years of the date the plaintiff attains the age of majority or within five years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual assault, whichever period expires later."

31. Each Plaintiff's state law claims are timely under the 22-year prong of § 340.11(a)(1). Each Plaintiff was under 40 years of age on the date this Complaint was filed, and therefore commenced this action within 22 years of the date he attained the age of majority.

32. In addition, and in the alternative, each Plaintiff's state law claims are independently timely under the five-year delayed-discovery prong of § 340.11(a)(1). As alleged in the Plaintiff-specific paragraphs below, no Plaintiff discovered, and no Plaintiff in the exercise of reasonable diligence could have discovered, that the psychological injuries he suffered after attaining the age of majority were caused by Domeniconi's childhood sexual assaults until the dates alleged as to each Plaintiff, each of which falls within five years of the filing of this Complaint.

33. Plaintiffs' delayed discovery was neither idiosyncratic nor a product of inattention. Rather, it was the foreseeable and intended consequence of the conduct alleged herein. Domeniconi selected as his victims minors in state custody whose liberty he controlled; conditioned those victims to understand that reporting his illegal and reprehensible behavior would be futile and that they would not be believed; that reporting him would result in probation violations and increased detention or

transfer; and inflicted the abuse described below under the guise of lawful custodial procedures, like strip searches, urinalysis testing, and home visits, which he was authorized to perform by the County. Domeniconi made clear to each Plaintiff that the abuse was an ordinary and lawful exercise of official authority, rather than an assault causing injury. The County, in turn, discarded written grievances against Domeniconi, contained complaints "in-house," and warned those who reported his questionable behavior that they risked their careers should they pursue the reports, as alleged in Paragraphs 50 through 63.

34. In the alternative, and to the extent any Plaintiff is found to have discovered or reasonably should have discovered the causal connection at an earlier date, the applicable limitations period was tolled and Defendants are estopped from asserting it, for the reasons alleged in Paragraphs 38 through 40 below.

**C. Plaintiffs' Claims Under 42 U.S.C. § 1983 Are Timely**

35. Plaintiffs' claims under 42 U.S.C. § 1983 are timely. Federal courts adjudicating section 1983 claims borrow the forum state's statute of limitations for personal injury actions, together with the state's related tolling rules, but the accrual of a section 1983 claim is governed by federal law, under which a claim does not accrue until the plaintiff knows or has reason to know both of his injury and of its causal connection to the defendant's conduct.

36. As to the County, the essential factual predicate of Plaintiffs' section 1983 claims — that County officials had received decades of written and verbal complaints concerning Domeniconi; had suppressed, discarded, and concealed those complaints; had declined to investigate, discipline, restrict, or remove him; and had retained and promoted him with knowledge of the risk he posed to minors in County custody — was affirmatively concealed from Plaintiffs and from the public by the County itself, through the conduct alleged in Paragraphs 50 through 63, including the disposal of written ward grievances in the garbage; the containment "in-house" of the 2002 incident and the directive that staff not discuss it; the suppression of the Etchison report and the warning to Etchison that his accusations could cost a career; and the threats of retaliation against reporting wards documented in the County's own 1991 records. The County's own 1990 and 1991 written memoranda described in Paragraphs 51 through 54, and the other contemporaneous records described in

Paragraphs 50 through 63, were at all relevant times within the County's exclusive possession and control and were not publicly available. Their existence was first revealed through investigation in related litigation in January 2026. No Plaintiff could, in the exercise of reasonable diligence, have discovered them at any earlier time.

37. No Plaintiff knew, or in the exercise of reasonable diligence could have known, of the County's institutional knowledge, concealment, and ratification of Domeniconi's conduct until the recent disclosures alleged as to each Plaintiff below, each of which falls within the applicable limitations period. Plaintiffs' section 1983 claims against the County accordingly did not accrue until those disclosures. In the alternative, and to the extent any Plaintiff's section 1983 claim is found to have accrued at an earlier date, the limitations period was tolled by Defendants' fraudulent concealment of the facts alleged above, and Defendants are equitably estopped from asserting it, for the reasons alleged in Paragraphs 38 and 40.

38. In addition, any applicable limitations period was tolled during each Plaintiff's minority pursuant to California Code of Civil Procedure § 352(a), and is further tolled under the doctrine of fraudulent concealment, based on Defendants' affirmative and deliberate concealment of Domeniconi's abuse, their active suppression of complaints, and the psychological coercion, threats, and conditioning Domeniconi inflicted on each Plaintiff beginning during his minority and continuing thereafter.

39. The limitations period borrowed for Plaintiffs' claims under 42 U.S.C. § 1983 is that of California Code of Civil Procedure § 335.1, California's general personal injury statute, subject to the federal accrual rule alleged in Paragraph 35 and to the tolling, concealment, and estoppel doctrines alleged in Paragraphs 36 through 40, including tolling during each Plaintiff's minority under California Code of Civil Procedure § 352(a).

**D. Equitable Estoppel**

40. Defendants are equitably estopped from asserting any limitations defense. Defendants' own conduct — including Domeniconi's explicit threats of filing probation violations against Plaintiffs, increased detention at juvenile hall, and retaliation against Plaintiffs if they reported, resisted, or disclosed the abuse; the County's disposal of written grievances by wards; the retaliation

threats against reporting wards documented in the County's 1991 records; the containment "in-house" of the 2002 incident and the directive that staff not discuss it; and the warning to Charles Etchison that his report could affect Domeniconi's career and lead to termination — was intended to and did prevent Plaintiffs from reporting the abuse, from discovering the County's institutional knowledge and role, and from pursuing their claims earlier. Having procured Plaintiffs' silence and delay through threats, concealments, and suppression, Defendants may not rely on that delay to defeat Plaintiffs' claims.

### E. No Government Claim Presentation Required

41. No government claim presentation was required as a condition of suit. California Code of Civil Procedure section 340.11(s) provides: "Notwithstanding any other law, including Chapter 1 of Part 3 of Division 3.6 of Title 1 of the Government Code (commencing with Section 900) and Chapter 2 of Part 3 of Division 3.6 of Title 1 of the Government Code (commencing with Section 910), a claim for damages described in paragraphs (1) to (3), inclusive, of subdivision (a), is not required to be presented to any government entity prior to the commencement of an action." Each cause of action asserted herein is a claim for damages described in paragraphs (1) to (3) of subdivision (a) of section 340.11. No government tort claim was therefore required, and the Government Claims Act presents no bar to any cause of action asserted herein.

## VI. <u>FACTUAL ALLEGATIONS</u>

### A. The County's Probation Enterprise and the Authority It Conferred

42. During the relevant periods — spanning from approximately the late 1980s through the early 2010s — the County of San Mateo operated and controlled a comprehensive juvenile probation enterprise, including custodial detention at Hillcrest Juvenile Hall and Camp Glenwood, as well as community-based supervision of juvenile probationers.

43. Pursuant to this enterprise, the County employed Deputy Probation Officers ("DPOs") and vested them with extraordinary coercive authority over juvenile probationers, including authority to:

a. Compel minors to submit to supervised urine analysis testing, including direct observation of urination;

b. Conduct strip searches, including searches requiring probationers to disrobe, turn, bend over, spread their buttocks, squat, and cough;

c. Monitor and supervise probationers in showers, bedrooms, and other intimate settings within County facilities;

d. Initiate, recommend, or threaten probation violations, resulting in increased detention, extended sentences, or adverse placement changes;

e. Issue reports and recommendations directly bearing on a probationer's liberty; and

f. Access probationers in custodial and quasi-custodial settings, including their homes, schools, and vehicles.

44. The County knew or should have known that this combination of extraordinary coercive authority, intimate physical access, and custodial power over vulnerable minors created a foreseeable and serious risk that a DPO could exploit that authority to sexually abuse the children under his control. The risk was not merely foreseeable in the abstract — it materialized repeatedly over decades, and the County was on notice of it.

45. To the extent any Defendant contends that California Government Code section 844.6 immunizes the County from liability for injury to a "prisoner," that contention does not reach abuse inflicted outside custodial confinement, does not reach Plaintiffs' claims under 42 U.S.C. § 1983, and does not reach Plaintiffs' claims against the Individual Defendants. *See* Cal. Gov't Code § 844.6(d).

**B. John Domeniconi — A Predator Enabled by County Authority**

46. John Domeniconi was employed by the County as a Deputy Probation Officer for decades. He is deceased.

47. At all relevant times, deputy probation officers employed by the County were peace officers within the meaning of California Penal Code section 830.5, vested with authority to arrest, detain, search, and initiate probation violations. Domeniconi exercised that coercive law-enforcement authority in the course of each category of abuse alleged herein, and each act of abuse was accomplished by means of it rather than merely during it. See *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202.

48. Domeniconi systematically used the coercive machinery of the County's probation enterprise — particularly the power to compel strip searches, observe urination, and threaten probation violations — to sexually abuse juvenile male probationers. His pattern of conduct included, but was not limited to:

a. Conducting extended, unjustified strip searches in private, without legitimate penological purpose, during which he directed minors to remove clothing, turn, bend over, spread their buttocks, and touch parts of their own bodies;

b. Inserting fingers or his thumb into the anuses of minors during purported strip searches;

c. Grabbing, fondling, and otherwise touching the genitalia of minors during purported urine analysis testing, including pulling back foreskin and holding minors' penises during urination;

d. Masturbating while watching minors shower in County facilities;

e. Forcing minors to perform oral sex acts, using threats of probation violations and adverse reports as coercion;

f. Kissing minors on the mouth, pressing his body against theirs, and physically restraining minors in unwanted embraces;

g. Making explicit and threatening comments about minors' genitalia, sexual development, and vulnerability to sexual assault;

h. Grooming minors through gifts, food, preferential treatment, and expressions of affection, followed by escalating sexual abuse;

i. Threatening minors with probation violations, increased confinement, adverse custody outcomes, and retaliation if they reported his conduct or refused to comply; and

j. Accessing minors at their schools, residences, in his private vehicle, and at County-affiliated community programs, exploiting the psychological dominance he had established through custodial abuse.

49. Domeniconi's abuse was not incidental to his employment; it was accomplished *through* his employment. His imposed strip searches, urine tests, and custodial supervision were the vehicles of his abuse. His threats of filing probation violations for non-compliance were his instruments of coercion. The County's badge and authority were his means of access and silence.

**C. The County's Actual Knowledge and Suppression of Complaints**

50. The County did not fail to prevent Domeniconi's abuse for want of information. From no later than 1990 forward, the County received a documented and accumulating series of written and verbal reports that Domeniconi was abusing, threatening, sexualizing, and grooming the minors in its custody. The County's response, in every instance, was to decline to investigate meaningfully, to decline to discipline, to decline to report, to suppress the complaint, and to return Domeniconi to duties affording him unsupervised and intimate access to children.

51. The County's written notice began no later than May 1990. On or about May 2, 1990, Group Supervisor Robert Juergens submitted a written memorandum captioned "Physical Abuse" to Senior Group Supervisor Cynthia Crowe-Urgo, reporting that on April 18, 1990, Domeniconi had shoved a minor ward with both hands, sending him backward several feet, and had then threatened the ward with a loss of privileges; that the same evening Domeniconi threatened to write a false incident report against another minor ward "in such a manner" as to have the ward transferred and to inflict "a week of dead time even if the incident did not warrant such action"; and that Juergens believed he was "being targeted by Domeniconi for the purpose of keeping me from notifying senior staff of the incidents." No adequate investigation was conducted, and no remedial action was taken.

52. On October 24, 1991, Domeniconi grabbed and then pinched the buttocks of a minor ward near the Nurse's Office of the County's juvenile facility, in the presence of another ward. On October 29, 1991, Group Supervisor Scott Urabe reported the incident in writing to Institution Supervisor John Crandall — to whom, per Urabe's memorandum, the "initial complaint of abusive behavior" concerning Domeniconi had already been made, and who had directed that matters of this nature be submitted to him. Urabe wrote that the report was warranted by "Domeniconi's past and current history involving incidents of this nature." No adequate investigation was conducted and no remedial action was taken.

53. On October 26, 1991, Group Supervisor Deborah Dempnock filed a written formal complaint with Senior Group Supervisors John Crandall and Don McCreadie, copied to Institutional Director Clarence Rolen, reporting that Domeniconi had made a sexually explicit and degrading remark about her to a minor ward and had instructed the ward to repeat it to her. Dempnock demanded to be informed, in writing, of the action management took.

54. On November 2, 1991, Urabe reported to Crandall in writing that Domeniconi had threatened to retaliate against the reporting ward — telling the ward that anyone who said what they had said about him would have their "ass in a royal sling." On November 15, 1991, after Dempnock submitted a written follow-up demand, Institutional Director Rolen responded in writing that Domeniconi had denied the allegations and that, "[a]fter consultation with the Institution Supervisors and the Deputy Chief," the Department had "concluded that the information was insufficient to take formal disciplinary action." By the County's own written record, complaints of Domeniconi's abusive and sexualized conduct toward wards had reached the Deputy Chief level of the Probation Department by November 1991 — and the Department's response was to do nothing. Domeniconi was retained, and was thereafter promoted to Deputy Probation Officer.

55. The County's ward grievance system offered no protection. In June 1991, a minor ward at Camp Glenwood submitted a written grievance complaining of Domeniconi's punitive and threatening conduct. The Camp Glenwood grievance record shows that the ward's grievance was received, answered, and rejected by Domeniconi himself, who wrote that he hoped the ward did not think "that a grievance will hinder or intimidate my actions."

56. Throughout the 1990s and 2000s, multiple juvenile probationers submitted written grievances and complaints to County staff and supervisors regarding Domeniconi's grooming behavior, boundary violations, and sexual misconduct. On information and belief, County staff disposed of written complaints in the garbage rather than processing, preserving, or investigating them. Probationers witnessed this disposal firsthand.

57. In or about 2002, County probation staff member Vielka McCarthy discovered Domeniconi alone with a minor probationer inside the minor's room in a unit at the County's Hillcrest juvenile facility, hugging and, on information and belief, kissing him. McCarthy reported the incident

up the chain of command. Anthony Orzem, a Director of the Probation Department (now deceased), told staff that the matter was "being dealt with in-house" — through the Department — and directed at least one officer not to discuss the matter with Domeniconi. Domeniconi was placed off work while the matter was handled internally, and was then returned to work with continued custodial access to minors.

58. By at least February 2002, the County was aware of at least one formal complaint of boundary violations and inappropriate conduct by Domeniconi with a probationer, which had been referred to and investigated by the County of San Mateo Sheriff's Office. The County took no adequate remedial action following this investigation, and allowed Domeniconi to continue in roles that provided him access to minors.

59. In or about the year 2010, Charles Etchison, the founder and director of the Jericho Project, a residential treatment program serving County probationers, telephoned the Probation Department to report Domeniconi's conduct: that Domeniconi had repeatedly appeared at the program; had represented himself as the current probation officer of program participants when he was not; had taken participants — his former juvenile probationers — out of the program for meals and shopping trips; and had bought them clothes, cologne, and other personal items. Etchison's call was transferred to Domeniconi's supervisor, Defendant Collins. Etchison told Collins that "there is something definitely wrong here," that the conduct was not typical of a probation officer, and that it had to be investigated. Collins responded by warning Etchison that he was making accusations that could affect someone's career and could lead to termination. No investigation followed.

60. In or about the 2000s, Deputy Probation Officer Michael Klingler reported to his unit supervisor that he had encountered Domeniconi, late at night, at the home of a minor probationer to whom Domeniconi was not assigned, and that Domeniconi had escalated the encounter to the point that he was nearly arrested. The supervisor shook his head and said he would follow up. On information and belief, no investigation followed.

61. On information and belief, supervisory personnel within the County Probation Department — including Institution Supervisor John Crandall; Chief Probation Officer Loren Buddress (now deceased); Assistant Chief Probation Officer Stewart Peterson (now deceased);

Director Anthony Orzem (now deceased); and each of the Individual Defendants — were directly informed, on multiple occasions prior to and during the period of each Plaintiff's abuse, of specific complaints alleging inappropriate sexualized conduct, boundary violations, and sexual abuse by Domeniconi.

62. The year-by-year identities of Domeniconi's supervisors, the routing and disposition of complaints against him, and his personnel and assignment records are exclusively within the County's possession and control. When required in related litigation to identify the persons with the ability to supervise Domeniconi for each year of his employment, the County's designated representative could not do so with any certainty. Plaintiffs' allegations made on information and belief are accordingly based on the County's own contemporaneous records, the sworn testimony of current and former County employees, and the County's own discovery responses and admissions in other litigation.

63. Despite this accumulating and irrefutable notice, the County:

a. Failed to adequately investigate complaints against Domeniconi;

b. Failed to discipline, restrict, or remove Domeniconi from positions of unsupervised access to juvenile probationers;

c. Failed to implement safeguards — including monitored strip searches, restrictions on one-on-one isolation with minors, mandatory two-officer presence during observed urine testing, and prohibitions on Deputy Probation Officers transporting probationers in personal vehicles — that were standard or reasonably required in comparable juvenile justice facilities;

d. Failed to train supervisory staff on mandatory reporting obligations, professional boundary requirements, recognition of grooming behavior, or protocols for receiving, investigating, and escalating complaints of staff sexual misconduct;

e. Failed to report suspected child abuse to law enforcement as required by California Penal Code § 11166 et seq.;

f. Promoted Domeniconi notwithstanding actual knowledge of complaints and warning signs, thereby ratifying his conduct and conferring additional institutional legitimacy that facilitated further abuse; and

g. Continued to assign Domeniconi duties that provided unsupervised, intimate access to juvenile male probationers, with full knowledge of the risk he posed.

64. The County's conduct constituted a *de facto* policy of deliberate indifference to the constitutional rights of juvenile probationers in its custody and care. This policy was the moving force behind the deprivation of each Plaintiff's constitutional rights.

65. On information and belief, the unconstitutional policies, customs, and practices described herein were known to, authorized, ratified, or implemented by officials with final policymaking authority within the County's Probation Department and County government, including but not limited to the Chief Probation Officer and other senior supervisory and managerial personnel.

**D. Color of Law**

66. At all relevant times, Domeniconi and the Individual Defendants acted under color of the laws, statutes, ordinances, regulations, customs, and usages of the State of California and the County of San Mateo, within the meaning of 42 U.S.C. § 1983.

67. Domeniconi's sexual abuse was accomplished *by virtue of* — not merely *during* — his exercise of state authority. His badge, his official duties, his power to initiate probation violations, and his authority to conduct strip searches and urine tests were not the backdrop of his abuse; they were the instrumentality of it. The abuse could not have occurred but for the authority the County granted him and the state machinery he wielded.

**E. Plaintiff-Specific Allegations**

68. Each Plaintiff was a minor male at the time of the primary abuse alleged herein, ranging from approximately 12 to 17 years of age during the relevant periods.

69. Each Plaintiff was under active probation supervision by the County's Probation Department at the time of the abuse alleged herein. Each Plaintiff was subject to the direct or de facto supervisory authority of John Domeniconi, whether or not Domeniconi was that Plaintiff's assigned probation officer.

70. Each Plaintiff was subjected to one or more of the categories of abusive conduct described in Paragraph 48, including unconstitutional strip searches, abusive urine testing, unwanted

sexual touching, coercive threats, grooming, and/or forced sexual acts, all accomplished through Domeniconi's exercise or threatened exercise of his official authority.

71. Each Plaintiff was threatened with probation violations, increased detention, adverse reports, or retaliation if he reported Domeniconi's conduct, refused to comply, or disclosed the abuse to parents, guardians, or other authorities.

72. Each Plaintiff suffered, and continues to suffer, severe psychological, emotional, and physical harm as a direct and proximate result of the constitutional violations, sexual abuse, and institutional failures alleged herein, including but not limited to: post-traumatic stress disorder; depression; anxiety; distorted relationships with authority, particularly male authority figures; difficulty with trust and interpersonal relationships; sexual dysfunction; substance use; impaired educational and vocational development; lost earnings; and diminished quality of life.

73. The injuries and illnesses described in Paragraph 72 are ongoing and substantially permanent.

**a. JOHN JL DOE**

74. John JL Doe was first arrested at age 15, in 2002, for public intoxication. He was detained in Hillcrest Juvenile Hall, and spent time in A, B, and D Units.

75. JL Doe's assigned probation agent was Heralyn Silva. Under the terms of his probation, Ms. Silva was permitted to search his home at any time.

76. A few days after being released from Hillcrest, JL Doe was late returning home for curfew. He was in possession of marijuana when he arrived at the house. Ms. Silva was there waiting for him.

77. Also present was John Domeniconi. JL Doe had first met Domeniconi when he was confined at Hillcrest.

78. Under Probation Department policy, only probation officers of the same gender as the juvenile could perform a strip search – in other words, since JL Doe was male, Ms. Silva could not search him. Thus, Ms. Silva brought Domeniconi.

79. Ms. Silva directed JL Doe to go into his bathroom. Domeniconi followed him and closed the door.

80. Domeniconi ordered JL Doe to remove his clothing. Domeniconi quickly found the marijuana JL Doe was carrying. Then, Domeniconi grabbed JL Doe's testicles and looked JL Doe directly in the eye.

81. Domeniconi began playing with JL Doe's testicles while maintaining eye contact. This lasted approximately five minutes. JL Doe was paralyzed, powerless to act.

82. Domeniconi let go, and returned the marijuana to JL Doe. He left the bathroom and he and Ms. Silva left.

83. JL Doe considered lodging a complaint but decided against doing so. He felt that the Probation Department would not take his complaint seriously.

84. JL Doe also feared retaliation from Domeniconi if he were to report him, given Domeniconi did not violate his probation after having discovered marijuana on his person.

85. Domeniconi sexually touched, harassed, battered, assaulted, abused, and groped John JL Doe without consent. The foregoing acts were committed for no other reason than to satisfy Domeniconi's own prurient sexual desires at the expense, suffering, and demise of vulnerable and defenseless minor probationers under his supervision.

86. John JL Doe suffers shame, embarrassment, and severe emotional distress to this day because of the abuse he suffered at the hands of Domeniconi.

87. John JL Doe has suffered, since attaining the age of majority, depression, anxiety, and disordered thinking. He did not understand, and in the exercise of reasonable diligence could not have understood, that those injuries were caused by Domeniconi's sexual assaults until May 2026, when he learned of other litigation concerning Domeniconi's abuse of juvenile probationers.

88. For years, John JL Doe lived in fear and was extremely ashamed of having been a victim of sexual abuse. He pledged to himself from a young age that he would not reveal the abuse, in part because he also feared Domeniconi's retaliation. In addition, John JL Doe did not know, and in the exercise of reasonable diligence could not have known, that the County had received, suppressed and concealed complaints concerning Domeniconi's conduct with minors, or that it had retained and promoted him with knowledge of that conduct, until on or about May 2026. The existence of the County's 1990 and 1991 written memoranda documenting complaints against Domeniconi, described

in Paragraphs 51 through 54, was first revealed through investigation in related litigation in January 2026, and did not become known to him until the date alleged above.

**b. JOHN KO DOE**

89. John KO Doe was first placed on probation in or about 2006, when he was eleven or twelve years old. He met Domeniconi while he was in custody at Hillcrest Juvenile Hall.

90. While at Hillcrest, Domeniconi would strip search KO Doe, and ask him to squat and cough.

91. When KO Doe was approximately 17 years old, he was homeless. Domeniconi offered KO Doe a room in his home. KO Doe felt he could not turn down the offer, given Domeniconi's position of power over him.

92. Domeniconi, in order to ingratiate himself to KO Doe, allowed KO Doe to smoke marijuana in the home.

93. However, Domeniconi insisted on administering urinalysis tests to KO Doe. During those tests, Domeniconi routinely touched KO Doe's penis, foreskin, and testicles. KO Doe felt powerless to stop Domeniconi from touching him in that way, because Domeniconi was providing him shelter.

94. KO Doe grew disenchanted with the abuse and eventually left Domeniconi's home. Domeniconi then issued him a probation violation in retaliation for leaving.

95. In 2012, Domeniconi told KO Doe to meet him at Beresford Skate Park in San Mateo. KO Doe sat down in Domeniconi's car and the two began to converse. Suddenly, Domeniconi ordered KO Doe to show him his penis. KO Doe asked why, and Domeniconi told him that if he didn't, he would violate KO Doe's probation and have him sent to jail. Domeniconi ordered KO Doe not to move, and began giving KO Doe oral sex. KO Doe repeatedly told Domeniconi to stop, until he managed to push him off and escape his vehicle.

96. Domeniconi sexually touched, harassed, battered, assaulted, abused, and groped John KO Doe without consent. The foregoing acts were committed for no other reason than to satisfy Domeniconi's own prurient sexual desires at the expense, suffering, and demise of vulnerable and defenseless minor probationers under his supervision.

97. John KO Doe suffers shame, embarrassment, and severe emotional distress to this day because of the abuse he suffered at the hands of Domeniconi.

98. John KO Doe has suffered, since attaining the age of majority, depression, anxiety, embarrassment, shame, and post-traumatic stress disorder. He did not understand, and in the exercise of reasonable diligence could not have understood, that those injuries were caused by Domeniconi's sexual assaults until May 2026, when he learned of ongoing state court litigation involving the County.

99. Domeniconi's abuse had a profound negative psychological effect on John KO Doe. KO Doe was so ashamed, he believed he would never tell anyone. In addition, John KO Doe did not know, and in the exercise of reasonable diligence could not have known, that the County had received, suppressed and concealed complaints concerning Domeniconi's conduct with minors, or that it had retained and promoted him with knowledge of that conduct, until on or about May 2026. The existence of the County's 1990 and 1991 written memoranda documenting complaints against Domeniconi, described in Paragraphs 51 through 54, was first revealed through investigation in related litigation in January 2026, and did not become known to him until the date alleged above.

**c. JOHN KS2 DOE**

100. John KS2 Doe was first placed on juvenile probation in or about 1996 or 1997, when he was 10 years old.

101. He spent two years in Hillcrest Juvenile Hall, beginning in or about 1997 or 1998, and ending in or about 2004 or 2005. On his first placement at Hillcrest, KS2 Doe was so young, he was placed in East Unit, with girls.

102. During that time, he met John Domeniconi. At the time, Domeniconi was responsible for admission to Hillcrest.

103. Upon arrival at Hillcrest, juveniles were instructed to prepare for a "dressed out" strip search. The strip search would require juveniles to strip naked and allow for probation officers to inspect their bodies for contraband. As one of the officers assigned to admission, Domeniconi was responsible for administering strip searches to male probationers.

104. On one occasion, in or about 2000, KS2 Doe appeared before a probation officer at admission, after being ordered to serve time at Hillcrest. Domeniconi was assisting the probation officer with the strip search.

105. Domeniconi ordered KS2 Doe to undress. He then ordered KS2 Doe to "squat and cough." KS2 Doe attempted to comply and turned around. Domeniconi became angry and said KS2 Doe had done it incorrectly. Domeniconi then put his hand on one of KS2 Doe's glutes for about five to ten seconds.

106. KS2 Doe was paralyzed and froze upon feeling Domeniconi's unconsented touching. KS2 Doe was afraid and fearful.

107. On a second occasion, approximately a few months after the first incident, KS2 Doe was changing his clothes in the admission unit. While fully disrobed, Domeniconi approached KS2 Doe without warning. With his hand, Domeniconi grabbed one of KS2 Doe's glutes, and squeezed it.

108. Domeniconi sexually touched, harassed, battered, assaulted, abused, and groped John KS2 Doe without consent. The foregoing acts were committed for no other reason than to satisfy Domeniconi's own prurient sexual desires at the expense, suffering, and demise of vulnerable and defenseless minor probationers under his supervision.

109. KS2 Doe suffers shame, embarrassment, and severe emotional distress to this day because of the abuse he suffered at the hands of Domeniconi.

110. KS2 Doe has suffered, since attaining the age of majority, depression, anxiety, post-traumatic stress disorder, and other severe emotional distress. He did not understand, and in the exercise of reasonable diligence could not have understood, that those injuries were caused by Domeniconi's sexual assaults until 2024, when speaking to another abused juvenile.

111. KS2 Doe felt deep shame and distress regarding his abuse at Domeniconi's hands. In addition, KS2 Doe did not know, and in the exercise of reasonable diligence could not have known, that the County had received, suppressed and concealed complaints concerning Domeniconi's conduct with minors, or that it had retained and promoted him with knowledge of that conduct, until on or about June 2026. The existence of the County's 1990 and 1991 written memoranda documenting complaints against Domeniconi, described in Paragraphs 51 through 54, was first revealed through

investigation in related litigation in January 2026, and did not become known to him until the date alleged above.

**d. JOHN TA DOE**

112. John TA Doe was placed on juvenile probation at age 15, after being arrested in 2002. His assigned probation officer was Tony Bennett.

113. At age 16, in or about 2003 or 2004, TA Doe was confined to Hillcrest Juvenile Hall several times.

114. In Juvenile Hall, Domeniconi strip searched TA Doe between five and ten different times. While conducting the strip search, Domeniconi would grab and fondle his penis and testicles. TA Doe would routinely cry during the imposition of the strip searches. Domeniconi would also press his face and body up against TA Doe's while abusing him. TA Doe can, to this day, remember the feeling of Domeniconi's mustache rubbing against his skin.

115. On one occasion, Domeniconi pulled TA Doe aside into a conference room after TA Doe and other probationers were served dinner. Without warning, Domeniconi strip-searched TA Doe while in the conference room.

116. After TA Doe was released from custody, in 2004 or 2005, he returned home to live with his family in Pacifica. Domeniconi began to appear at the home shortly after, and told TA Doe that he would be the probation officer responsible for administering urinalysis tests. Domeniconi performed these drug tests once or twice per week.

117. TA Doe felt like Domeniconi was picking on him. Domeniconi was often stern and mean towards TA Doe. At the time, TA Doe did not understand why. He developed a fear of Domeniconi over time.

118. Domeniconi also began to appear without warning at TA Doe's school, Terra Nova High School. Domeniconi would pull TA Doe into a bathroom next to the nurse's office and administer him urinalysis tests, in much the same way. This happened on more than three separate occasions in 2004 or 2005.

119. One of TA Doe's close friends in Juvenile Hall took his own life because of Domeniconi's actions. Learning of his friend's death terrified TA Doe further, and caused him to

internalize and hide his status as a victim. TA Doe also perceived that other probationers and other staff were afraid of Domeniconi, and would not challenge him or complain about his actions.

120. Domeniconi sexually touched, harassed, battered, assaulted, abused, and groped John TA Doe without consent. The foregoing acts were committed for no other reason than to satisfy Domeniconi's own prurient sexual desires at the expense, suffering, and demise of vulnerable and defenseless minor probationers under his supervision.

121. John TA Doe suffers shame, embarrassment, and severe emotional distress to this day because of the abuse he suffered at the hands of Domeniconi.

122. John TA Doe has suffered, since attaining the age of majority, depression, anxiety, and unspecified severe emotional distress. He did not understand, and in the exercise of reasonable diligence could not have understood, that those injuries were caused by Domeniconi's sexual assaults until August 2026, when he learned of the existence of state court litigation against the County.

123. John TA Doe did not make the causal connection between Domeniconi's abuse and his symptoms until August 2026 because of the extreme shame he suffered, as well as his fear of reprisal from Domeniconi. In addition, John TA Doe did not know, and in the exercise of reasonable diligence could not have known, that the County had received, suppressed and concealed complaints concerning Domeniconi's conduct with minors, or that it had retained and promoted him with knowledge of that conduct, until on or about August 2026. The existence of the County's 1990 and 1991 written memoranda documenting complaints against Domeniconi, described in Paragraphs 51 through 54, was first revealed through investigation in related litigation in January 2026, and did not become known to him until the date alleged above.

**e. JOHN MW DOE**

124. John MW Doe was first placed on juvenile probation in 2002, at the age of fourteen.

125. He was placed in Hillcrest Juvenile Hall for the first time in 2003. There, he met John Domeniconi.

126. MW Doe noticed Domeniconi doing things that he did not understand relatively quickly. Once, MW Doe was showering in his unit's bathroom. Out of the corner of his eye, he

noticed Domeniconi at the threshold of the shower, watching MW Doe intently. Domeniconi's hands were in his pants. MW Doe was terrified and pretended not to see Domeniconi.

127. Domeniconi did not stop, remaining there until MW Doe finished his shower and exited. MW Doe was extremely uncomfortable.

128. Domeniconi watched MW Doe shower approximately ten total times while MW Doe was in custody at Hillcrest.

129. Domeniconi also would touch and hug MW Doe's naked body, including touching his buttocks. This also happened around ten times in total.

130. In 2005, while MW Doe was on juvenile probation and being supervised in the community, Domeniconi appeared unannounced and confronted MW Doe. He told MW Doe that he was going to administer him a urinalysis test. MW Doe was terrified and had no option but to comply.

131. Domeniconi entered the bathroom with MW Doe and made him disrobe from waist down. During the "test," Domeniconi began to ogle and stare at MW Doe's penis. Without MW Doe's consent, he touched MW Doe's penis.

132. MW Doe recalls this invasive and abusive urinalysis test happening one other time.

133. MW Doe did not report or complain about Domeniconi's abusive behavior while he was on supervised probation, because he was embarrassed and ashamed.

134. Domeniconi sexually touched, harassed, battered, assaulted, abused, and groped John MW Doe without consent. The foregoing acts were committed for no other reason than to satisfy Domeniconi's own prurient sexual desires at the expense, suffering, and demise of vulnerable and defenseless minor probationers under his supervision.

135. John MW Doe suffers shame, embarrassment, and severe emotional distress to this day because of the abuse he suffered at the hands of Domeniconi.

136. John MW Doe has suffered, since attaining the age of majority, anxiety, depression, shame, fear, embarrassment, and post-traumatic stress disorder. He did not understand, and in the exercise of reasonable diligence could not have understood, that those injuries were caused by Domeniconi's sexual assaults until April 2026, when speaking with another abused juvenile.

137. John MW Doe did not make the causal connection from the abuse to his injuries because of the profound shame and embarrassment he felt regarding being victimized. In addition, John MW Doe did not know, and in the exercise of reasonable diligence could not have known, that the County had received, suppressed and concealed complaints concerning Domeniconi's conduct with minors, or that it had retained and promoted him with knowledge of that conduct, until on or about April 2026. The existence of the County's 1990 and 1991 written memoranda documenting complaints against Domeniconi, described in Paragraphs 51 through 54, was first revealed through investigation in related litigation in January 2026, and did not become known to him until the date alleged above.

## VII. <u>CAUSES OF ACTION</u>

### <u>FIRST CAUSE OF ACTION</u>

**Violation of 42 U.S.C. § 1983 — Fourth Amendment (Unreasonable Searches)**

*(Against Defendant County of San Mateo and the Individual Defendants)*

138. Plaintiffs re-allege and incorporate by reference each and every allegation above as though fully set forth herein.

139. The Fourth Amendment to the United States Constitution, made applicable to the states and their subdivisions through the Fourteenth Amendment, protects individuals against unreasonable searches of their persons. This protection applies to persons in state custody, including juvenile detainees and probationers subject to state supervision.

140. A search conducted for the purpose of sexual gratification serves no legitimate penological or supervisory purpose and is unreasonable under the Fourth Amendment regardless of the custodial setting. *Fontana v. Haskin*, 262 F.3d 871 (9th Cir. 2001); *Byrd v. Maricopa County Sheriff's Department*, 629 F.3d 1135 (9th Cir. 2011) (en banc). The scope, manner, justification, and place of an intimate search must each be reasonable, and a search that is prolonged, repeated, conducted in isolation, and accompanied by sexual touching or penetration exceeds any legitimate justification.

141. Domeniconi's conduct toward each Plaintiff, as alleged in the Plaintiff-specific paragraphs above — including directing Plaintiffs to disrobe and then grabbing, fondling, and

squeezing their genitals and buttocks during purported strip searches; touching Plaintiffs' penises, foreskins, and testicles during purported urinalysis testing; and conducting those searches and tests in isolated settings, including a home bathroom, a closed conference room, and a school bathroom — constituted egregious, objectively unreasonable searches with no legitimate governmental justification.

142. Each such search was conducted under color of state law, using the official authority conferred upon Domeniconi by the County, and constituted an unreasonable search in violation of the Fourth Amendment.

143. The County, through the policies, customs, practices, and deliberate indifference described herein, was the moving force behind these constitutional violations.

144. The Supervisory Defendants, Forrest, Freitas, Stauffer, Wilson-Henry, MacAskill, and Collins, are liable in their individual capacities for implementing, authorizing, or knowingly acquiescing in the unconstitutional search practices, with deliberate indifference to the known risk of harm to Plaintiffs.

145. As a direct and proximate result of these constitutional violations, each Plaintiff suffered the damages described herein.

## SECOND CAUSE OF ACTION

**Violation of 42 U.S.C. § 1983 — Fourteenth Amendment (Substantive Due Process / Bodily Integrity)**

*(Against Defendant County of San Mateo and the Individual Defendants)*

146. Plaintiffs re-allege and incorporate by reference each and every allegation above as though fully set forth herein.

147. The Fourteenth Amendment guarantees substantive due process, including the fundamental right to bodily integrity — the right to be free from state-imposed sexual abuse and sexual violence. This right is particularly acute for persons in the custody and care of the state, who cannot remove themselves from harm and who are uniquely dependent on the state for their safety and

protection. *Youngberg v. Romeo*, 457 U.S. 307 (1982); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451–52 (5th Cir. 1994); *Plumeau v. School Dist. No. 40*, 130 F.3d 432 (9th Cir. 1997).

148. Domeniconi's sexual abuse of each Plaintiff, as alleged in the Plaintiff-specific paragraphs above and committed under color of and by means of official probation authority, constituted a profound and deliberate violation of each Plaintiff's right to bodily integrity, of a character "shocking to the conscience" within the meaning of *County of Sacramento v. Lewis*, 523 U.S. 833 (1998).

149. The County's sustained deliberate indifference to Domeniconi's known pattern of sexual abuse, its affirmative suppression of complaints, its promotion of Domeniconi notwithstanding notice of his conduct, and its failure to implement any meaningful safeguards constituted a policy and practice that was the moving force behind the deprivation of each Plaintiff's substantive due process rights.

150. The Supervisory Defendants, Forrest, Freitas, Stauffer, Wilson-Henry, MacAskill, and Collins, who had actual knowledge of Domeniconi's conduct and knowingly failed to intervene, are individually liable under *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011).

151. As a direct and proximate result of these constitutional violations, each Plaintiff suffered the damages described herein.

## **THIRD CAUSE OF ACTION**

**Violation of 42 U.S.C. § 1983 — Fourteenth Amendment (Equal Protection)**

*(Against Defendant County of San Mateo and the Individual Defendants)*

152. Plaintiffs re-allege and incorporate by reference each and every allegation above as though fully set forth herein.

153. The Fourteenth Amendment's Equal Protection Clause prohibits state actors from subjecting individuals to discriminatory treatment based on sex or gender.

154. Domeniconi's victims were uniformly young males. A substantial motivating factor in Domeniconi's selection and targeting of victims was the victims' sex. Domeniconi deliberately selected male probationers as targets for sexual abuse based on their sex.

155. The County's failure to investigate, act upon, or remedy Domeniconi's known pattern of gender-targeted sexual abuse — including its promotion of Domeniconi and disposal of complaints — constituted deliberate indifference to gender-based discrimination, violating the Equal Protection rights of each Plaintiff.

156. As a direct and proximate result of these constitutional violations, each Plaintiff suffered the damages described herein.

## FOURTH CAUSE OF ACTION

### *Monell* Municipal Liability — 42 U.S.C. § 1983

*(Against Defendant County of San Mateo)*

157. Plaintiffs re-allege and incorporate by reference each and every allegation above as though fully set forth herein.

158. Defendant County of San Mateo is a municipality and public entity subject to liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for constitutional violations caused by its own policies, customs, and practices.

159. The County's liability is established on each of the following independent and overlapping Monell theories:

**Theory 1: Longstanding Custom and Practice of Deliberate Indifference**

160. The County maintained a longstanding, widespread, and well-settled *de facto* custom and practice of ignoring, suppressing, and failing to investigate or act upon complaints of sexual misconduct by Domeniconi and, on information and belief, other Probation Department personnel. This custom was so persistent and widespread as to constitute a standard operating procedure that effectively endorsed the unconstitutional conduct. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

161. Specifically, the County's custom and practice included: disposing of probationers' written grievances without review; discrediting complainants; retaining Domeniconi and other misconduct-prone DPOs in positions of custodial access; and failing to refer complaints to law enforcement or child protective services.

**Theory 2: Failure to Train and Supervise with Deliberate Indifference**

162. The County maintained a policy or custom of failing to adequately train supervisory personnel on: (a) recognizing the warning signs of grooming and sexual abuse by staff; (b) mandatory reporting obligations under Penal Code § 11166 et seq.; (c) proper procedures for conducting, monitoring, and documenting strip searches and urine testing; (d) protocols for receiving, investigating, and escalating complaints of staff sexual misconduct; and (e) policies prohibiting isolation of minors with individual staff members. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

163. The need for such training was plainly obvious given the nature of juvenile probation work and the County's actual notice of Domeniconi's conduct. The County's failure to train amounted to deliberate indifference to the constitutional rights of juvenile probationers. *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

**Theory 3: Ratification by Final Policymakers**

164. Officials with final policymaking authority within the County's Probation Department — including, on information and belief, the Chief Probation Officer and senior administrative officials — had actual knowledge of Domeniconi's misconduct and affirmatively ratified it through continued employment, promotion, and continued assignment of unsupervised access to minors. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999).

165. In particular, Loren Buddress, now deceased, was Chief Probation Officer during much of the relevant period and a final policymaker; his decisions to retain, promote, and protect Domeniconi despite actual knowledge of complaints constitute ratification attributable to the County.

166. The decision to promote Domeniconi, made with actual or constructive knowledge of complaints against him, constitutes the clearest possible evidence of ratification: a final policymaker deliberately chose to elevate a known abuser rather than remove him. That ratification became the moving force behind the continuation of Domeniconi's abuse.

**Theory 4: Deliberately Indifferent Policy of Inadequate Safeguards**

167. The County failed to implement any meaningful structural safeguards to prevent the foreseeable abuse of minors by Probation Officers, including: prohibitions on one-on-one strip searches; requirements that strip searches be conducted with two officers present or with contemporaneous documentation; meaningful oversight of urine testing procedures; restrictions on

DPOs taking probationers in private vehicles; and complaint systems accessible to and protective of juvenile probationers. The failure to implement these basic safeguards, in the face of obvious need and actual notice, constitutes deliberate indifference amounting to an unconstitutional policy. *Gibson v. County of Washoe*, 290 F.3d 1175, 1194 (9th Cir. 2002).

168. Each of the foregoing policies, customs, and practices was the moving force behind the deprivation of Plaintiffs' Fourth and Fourteenth Amendment rights. *City of Canton*, 489 U.S. at 389.

169. As a direct and proximate result of the County's unconstitutional policies, customs, practices, and deliberate indifference, each Plaintiff suffered the damages described herein.

## FIFTH CAUSE OF ACTION

### Violation of the Bane Act (California Civil Code § 52.1)

*(Against Defendant County of San Mateo and the Individual Defendants)*

170. Plaintiffs re-allege and incorporate by reference each and every allegation above as though fully set forth herein.

171. California Civil Code § 52.1(c) provides a private right of action for interference with state or federal civil rights by threats, intimidation, or coercion.

172. Domeniconi, acting within the course and scope of his employment with the County, knowingly and intentionally interfered with each Plaintiff's rights to bodily integrity, personal security, privacy, and freedom from official coercion and sexual violence under the Fourth and Fourteenth Amendments and California law, through violence, sexual abuse, and — separately and independently — through threats of probation violations, increased detention, adverse reports, and retaliation for reporting.

173. The coercive threats were independent of and in addition to the sexual touching itself, satisfying the "threats, intimidation, or coercion" requirement of section 52.1. *Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 843 (2004); *Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766, 801–03 (2017).

174. The Supervisory Defendants, Forrest, Freitas, Stauffer, Wilson-Henry, MacAskill, and Collins, acting within the course and scope of their employment, further interfered with Plaintiffs'

rights through affirmative suppression of complaints, intimidation of reporting victims, and institutional inaction amounting to deliberate indifference and ratification.

175. The County is vicariously liable for Bane Act violations committed by its employees, including Domeniconi and the Individual Defendants, under Government Code section 815.2.

176. Plaintiffs seek all relief available for a violation of California Civil Code section 52.1, including actual damages, exemplary damages, the statutory civil penalty, and attorney's fees and costs, pursuant to Civil Code sections 52.1(c), 52.1(i), and 52(b). Plaintiffs do not seek punitive or exemplary damages against the County. See Cal. Gov't Code § 818. Exemplary damages under Civil Code section 52(b)(1) are sought against the Individual Defendants, in their personal capacities only.

## SIXTH CAUSE OF ACTION

**Sexual Battery (California Civil Code § 1708.5; Government Code § 815.2)**

(*Against Defendant County of San Mateo*)

177. Plaintiffs re-allege and incorporate by reference each and every allegation above as though fully set forth herein.

178. Domeniconi, acting within the course and scope of his employment with the County, intentionally committed acts intended to, and that did, cause harmful and offensive contact with the sexual organs, anus, groin, and/or buttocks of each Plaintiff, as alleged in the Plaintiff-specific paragraphs above, in a manner that would offend a reasonable sense of personal dignity.

179. Plaintiffs did not and could not give meaningful consent to any such acts, given Domeniconi's custodial authority, the coercion inherent in the threat of probation violations, and each Plaintiff's youth, vulnerability, and confinement.

180. The County is vicariously liable under Government Code § 815.2.

181. As a direct and proximate result, each Plaintiff suffered the damages described herein.

## SEVENTH CAUSE OF ACTION

**Battery (Common Law; Government Code § 815.2)**

(*Against Defendant County of San Mateo*)

182. Plaintiffs re-allege and incorporate by reference each and every allegation above as though fully set forth herein.

183. To the extent this cause of action is not subsumed by Civil Code section 1708.5, Domeniconi, acting within the course and scope of his employment, intentionally committed acts resulting in harmful or offensive contact with each Plaintiff, including non-consensual touching that would offend a reasonable sense of personal dignity.

184. The County is vicariously liable for Domeniconi's offensive touching of Plaintiffs under Government Code § 815.2.

185. As a direct and proximate result, each Plaintiff suffered the damages described herein.

## EIGHTH CAUSE OF ACTION

**Intentional Infliction of Emotional Distress (Government Code § 815.2)**

(*Against Defendant County of San Mateo and the Individual Defendants*)

186. Plaintiffs re-allege and incorporate by reference each and every allegation above as though fully set forth herein.

187. The conduct of Domeniconi and the Individual Defendants, as described herein, was extreme and outrageous, exceeding all bounds tolerated in a civilized society, and was intended to cause or carried out with reckless disregard of the probability that it would cause each Plaintiff to suffer severe emotional distress.

188. The County's employees' knowing promotion of a serial child abuser while suppressing the complaints of his victims constitutes outrageous conduct, independent of Domeniconi's direct abuse.

189. As a direct and proximate result of this conduct, each Plaintiff suffered severe and continuing emotional distress, including the injuries and illnesses described in Paragraph 72.

190. The County is vicariously liable under Government Code § 815.2. Punitive damages are sought against the Individual Defendants only. See Cal. Gov't Code § 818.

## NINTH CAUSE OF ACTION

**Negligence (Government Code § 815.2)**

*(Against Defendant County of San Mateo and the Individual Defendants)*

191. Plaintiffs re-allege and incorporate by reference each and every allegation above as though fully set forth herein.

192. Domeniconi, the Individual Defendants, and Domeniconi's supervisors owed each Plaintiff a special duty of care arising from the custodial and supervisory relationship between County Probation Officers and juvenile probationers. This duty encompassed the obligation to use reasonable care to protect probationers from harm, including harm by other County employees with custodial access.

193. Defendants breached this duty through the acts and omissions described herein, including failures to investigate complaints, failures to supervise, failures to implement safeguards, affirmative suppression of complaints, and promotion of a known abuser.

194. These breaches were a substantial factor in causing each Plaintiff's harm.

195. The County is vicariously liable under Government Code § 815.2 for the negligent acts and omissions of its employees acting within the course and scope of employment.

## TENTH CAUSE OF ACTION

**Negligent Hiring, Supervision, and Retention**

*(Against Defendant County of San Mateo and the Individual Defendants)*

196. Plaintiffs re-allege and incorporate by reference each and every allegation above as though fully set forth herein.

197. This cause of action is brought against the Individual Defendants in their individual and supervisory capacities, as those persons responsible for the hiring, training, supervision, discipline, and retention of Domeniconi and other probation department personnel.

198. The Individual Defendants knew or should have known — as early as 1990 and with accumulating certainty thereafter — that Domeniconi posed a foreseeable and serious risk of sexual harm to juvenile probationers.

199. Despite this knowledge, the Individual Defendants failed to take reasonable steps to restrict, discipline, remove, or report Domeniconi, and instead promoted him and continued to assign him unsupervised access to vulnerable minors.

200. These failures were a substantial factor in causing each Plaintiff's harm.

201. The County's liability is asserted under Government Code § 815.2 and to the extent authorized by statute.

## VIII. DAMAGES

202. As a direct and proximate result of all Defendants' conduct, each Plaintiff has suffered and continues to suffer damages including:

a. **Non-economic damages:** Severe and permanent psychological injury; post-traumatic stress disorder; depression; anxiety; shame; humiliation; loss of self-esteem; loss of enjoyment of life; flashbacks and intrusive thoughts; difficulty sleeping; and impaired relationships with others, particularly male authority figures;

b. **Economic damages:** Past and future lost earnings and earning capacity; loss of educational and professional development opportunities; and past and future costs of medical, psychological, and psychiatric treatment and counseling;

c. **Statutory and enhanced damages**, including exemplary damages and the statutory civil penalty under California Civil Code section 52(b), and treble damages under California Code of Civil Procedure section 340.11(b) against the Individual Defendants found to have covered up the childhood sexual assault of a minor; and

d. **Attorney's fees** pursuant to 42 U.S.C. § 1988(b), California Civil Code sections 52(b)(3) and 52.1(i), and other applicable law.

203. Plaintiffs do not seek punitive or exemplary damages against the County of San Mateo. See Cal. Gov't Code § 818. Punitive and exemplary damages are sought against the Individual Defendants, in their personal capacities only, to the extent permitted by law.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. For compensatory damages — past, present, and future, economic and non-economic — in amounts to be determined at trial;

2. For statutory and enhanced damages, including exemplary damages and the statutory civil penalty under California Civil Code section 52(b), and treble damages under California Code of Civil Procedure section 340.11(b) against the Individual Defendants found to have covered up the childhood sexual assault of a minor;

3. For exemplary and punitive damages against the Individual Defendants pursuant to California Civil Code section 52(b)(1) and 42 U.S.C. § 1983, in amounts sufficient to punish and deter the conduct alleged herein;

4. For reasonable attorney's fees pursuant to 42 U.S.C. § 1988(b) and California Civil Code sections 52(b)(3) and 52.1(i);

5. For costs of suit;

6. For pre-judgment and post-judgment interest as permitted by law; and

7. For such other and further relief as this Court deems just and proper.

Dated: November 6, 2026 **GOETHALS & STONE, PC**

By: <u>*/s/ David G. Hollenberg*</u>
JOSEPH M. GOETHALS
CHARLES P. STONE
DAVID G. HOLLENBERG
*Attorneys for Plaintiffs*

## X. <u>JURY TRIAL DEMAND</u>

Plaintiffs demand a trial by jury on all causes of action so triable.

Dated: November 6, 2026 **GOETHALS & STONE, PC**

By: <u>*/s/ David G. Hollenberg*</u>
JOSEPH M. GOETHALS
CHARLES P. STONE
DAVID G. HOLLENBERG
*Attorneys for Plaintiffs*